ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **JAVIER A. LÓPEZ RAMOS**<br><br>Recurrido<br><br>v.<br><br>**ADLYN R. PADILLA RODRÍGUEZ**<br><br>Peticionaria | KLCE202400791 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo**<br><br>Civil Núm.:<br>**C DI2021-0674**<br><br>Sobre:<br>Divorcio (R.I.) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de septiembre de 2024.

Comparece ante este Tribunal de Apelaciones, la señora Adlyn R. Padilla Rodríguez (señora Padilla Rodríguez o peticionaria) y nos solicita que revisemos la *Resolución* dictada el 13 de mayo de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Arecibo.[1] Mediante la misma, el TPI aprobó e hizo formar parte de su dictamen el *Informe y Recomendaciones* sometido por la Examinadora de Pensiones Alimentarias (EPA) el 9 de mayo de 2024.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos la *Resolución* recurrida.

## I.

Según surge del expediente, el señor Javier A. López Ramos (señor López Ramos o recurrido) y la señora Padilla Rodríguez son los padres de JALO, nacido el 30 de mayo de 2009. Mediante

---

[1] A la *Solicitud y Declaración para que se Exima de Pago de Arancel por Razón de Indigencia* presentada por la señora Padilla Rodríguez, se declara *Ha Lugar*. Del expediente surge una *Certificación de Representación Legal Probono* de la licenciada Carliz De La Cruz Hernández, quien le ofrece servicios legales gratuitos en el caso de autos.

*Resolución* del 8 de diciembre de 2023, el TPI mantuvo provisionalmente la pensión alimentaria a favor del menor ascendente a $539.18 mensuales, conforme establecida en la *Resolución* del 15 de junio de 2015. Como parte de los trámites de la revisión de la pensión alimentaria, el caso fue referido a la EPA. El 30 de noviembre de 2023 se llevó a cabo una vista de revisión de pensión alimentaria a la cual no compareció la señora Padilla Rodríguez, más sí su representación legal. También compareció el señor López Ramos junto a su abogada. En dicha vista se hizo constar que existía controversia en los gastos de vivienda y de colegio del menor.[2]

En lo pertinente a la controversia que hoy atendemos, el 5 de marzo de 2023 y el 14 de marzo de 2024, respectivamente, la señora sometió sus correspondientes *Planilla de Información Personal y Económica* (PIPE) en las cuales detalló, bajo juramento, sus ingresos y gastos mensuales.

Tras múltiples incidentes procesales, el 6 de mayo de 2024 se celebró una vista de revisión de pensión alimentaria mediante videoconferencia. Escuchados los testimonios de ambas partes y examinadas las correspondientes PIPE, la EPA formuló las siguientes determinaciones de hechos:

1. Las partes tienen en común un alimentista de 14 años, quien se encuentra bajo la custodia de la madre. El señor López Ramos es la persona no custodia.

2. El 10 de abril de 2023, la Hon. María A. González Cardona ordenó la revisión de la pensión alimentaria.

3. La persona no custodia trabaja como coordinador de servicios técnicos al usuario en el Recinto de Ciencias Médicas, Universidad de Puerto Rico. Su ingreso neto mensual asciende a $2,238.54, según se tomó en consideración en la vista de pensión alimentaria provisional, celebrada el 30 de

---

[2] Del *Informe y Recomendaciones* se desprende que las partes estipularon que se mantuviera provisionalmente la pensión alimentaria de $539.18 mensuales, a razón de $269.59 quincenales. Apéndice del alegato en oposición, págs. 53-56.

noviembre de 2023, y conforme a su Planilla de Información Personal y Económica. (PIPE).

4. El ingreso neto de reserva de la persona no custodia es $996.97 mensuales.

5. La persona custodia se desempeña como trabajadora social en Bright Little Minds, en Arecibo. Su ingreso neto mensual asciende a $1,583.45, según se tomó en consideración en la vista de pensión alimentaria provisional, celebrada el 30 de noviembre de 2023, y conforme a sus PIPE's.

6. El ingreso neto mensual combinado de las partes asciende a la suma de $3,821.99.

7. La pensión alimentaria básica bajo las Guías Mandatorias de 30 de octubre de 2014 asciende a $522.44 mensuales y bajo las nuevas Guías Mandatorias de 15 de marzo de 2024 asciende a $523.41 mensuales.

8. Del ingreso neto mensual combinado de las partes, la proporción que corresponde al padre alimentante es de 59% y la que corresponde a la madre alimentante es de 41%.

9. La señora Padilla Rodríguez alegó que el pago de renta de la residencia donde habita junto al menor asciende a $535.00 mensuales. **Como evidencia de dicho gasto le produjo a la otra parte, y también unió a su PIPE, copia de una carta con fecha de 30 de noviembre de 2023, con una firma de la cual no se puede leer ni distinguir el nombre del suscribiente y cuyo contenido es el siguiente**:

La presente es para indicar que la Sra. Adlyn Padilla Rodríguez, mayor de edad y vecina de Manatí P.R.; es inquilina de una de mis propiedades desde hace aproximadamente varios años. Esta reside con su hijo Javier López Padilla, la cual cuenta con un canon de arrendamiento de $535.00 mensuales, no incluye los servicios sanitarios (AAÁ) ni energético (AEE) ni servicio de internet inalámbrico (WIFI).
Cualquier duda o pregunta pueden comunicarse directamente al 787-669-7201.
Sin nada más,
[firma]
(Énfasis nuestro).

10. Nótese, que del contenido antes expuesto no se desprende el nombre del arrendador, la dirección de la residencia, la fecha del contrato de arrendamiento ni el tiempo específico, o al menos aproximado, que la señora Padilla Rodríguez lleva rentando la propiedad. Además, la firma no es legible y la carta no contiene timbrado o algún otro signo que permita identificar al que la suscribe. **Por tanto, aun si para efectos de este ejercicio asumiéramos que el referido documento cumple con los requisitos de las reglas de evidencia para ser admitido al**

**expediente, la realidad es que el mismo carece de valor probatorio**. (Énfasis nuestro).

11. Por su parte, la señora Padilla Rodríguez testificó que, el arrendador es el Sr. Israel Reyes Cosme y que le alquila la propiedad desde hace aproximadamente 2 años. Ahora bien, al preguntarle sobre la dirección específica de la residencia esta indicó que no se la sabía de memoria porque no la utilizaba mucho y, tras un esfuerzo, mencionó que era: Carretera 233 Bo. Tierras Nuevas, Manatí. Se hace constar que, de la PIPE de 5 de marzo de 2023 se desprende como dirección residencial: Asia 32 Mónaco, Manatí, PR 00674 y de la PIPE de 14 de marzo de 2024 se desprende: Calle Azabache 233, Manatí PR 00674. Luego, al pedirle que describiera la ruta para llegar a la residencia, **brindó un testimonio forzado e impreciso**. (Énfasis nuestro).

12. También, la señora Padilla Rodríguez señaló que había firmado el contrato de arrendamiento aproximadamente 1 años (sic) atrás, pero que el mismo estaba vencido y que ahora se encontraba en un arrendamiento "mes a mes".

13. En cuanto al pago de la residencia, la señora Padilla Rodríguez indicó que lo efectuaba en efectivo y que el arrendador le entregaba un recibo como evidencia de pago.

14. Además, la señora Padilla Rodríguez mencionó que, la dirección que se desprende de la PIPE de 5 de septiembre de 2023 corresponde a la residencia de sus señores padres pero que no ha vivido con ellos. Al preguntarle porqué la incluyó como su dirección residencial esta indicó que, **no divulgó su dirección actual como consecuencia de unas órdenes de protección *ex parte* que había presentado allá para el 2018-2019, en contra del señor López Ramos**. No obstante, en la PIPE de 14 de marzo de 2024, la señora Padilla Rodríguez mencionó otra dirección residencial, según ya se detalló. (Énfasis nuestro).

15. En consideración a los incisos anteriores, es preciso señalar en primer lugar que, **mina la credibilidad de la señora Padilla Rodríguez el que lleve 2 años habitando junto a su hijo en una residencia y se le dificulte recordar la dirección y describir la ruta**. (Énfasis nuestro).

16. Con relación al contrato de arrendamiento y a los recibos de pago, los mismos no fueron producidos a la otra parte ni tampoco fueron presentados durante la vista. Nos parece irrazonable que desde que este caso comenzó allá para abril de 2023, entiéndase hace más de 1 año, dichos documentos, los cuales son de fácil producción y que deben encontrarse en poder de la señora Padilla Rodríguez, no se hayan presentado para acreditar el referido gasto de vivienda. Aún más, le resta credibilidad al testimonio de la señora Padilla Rodríguez el hecho de que, en lugar de los documentos antes mencionados, haya

presentado la carta de noviembre de 2023, con tan escaza (sic) información y signos de confiabilidad, según ya mencionamos. Recordemos que, el peso de la prueba sobre este asunto recae en la señora Padilla Rodríguez.

17. También, saltan a la vista las incongruencias en las direcciones residenciales ofrecidas en el testimonio de la señora Padilla Rodríguez y sus PIPE's. Tampoco nos pareció razonable la justificación de que no divulgara en su PIPE de 5 de septiembre de 2023 su dirección residencial, cuando no existe ninguna orden de protección en contra del señor López Ramos.

18. **En síntesis, no nos mereció credibilidad el testimonio brindado por la señora Padilla Rodríguez en cuanto al gasto de vivienda**. **Por consiguiente, es forzoso concluir que, el referido gasto no fue probado y que, por ende, no procede incluirlo como parte del cómputo de la pensión alimentaria.** (Énfasis nuestro).

19. Al presente, el menor estudia en colegio privado. Existe controversia sobre el consentimiento del señor López Ramos a que el menor continue estudiando en colegio privado. Dicha controversia se encuentra ante la consideración del Hon. Brian Burgos Hernández. De este modo, hasta que otra cosa se nos ordene, solo se recomendará que el señor López Ramos aporte el 59% de los gastos escolares, regulares y extraordinarios, excluyendo matrícula, mensualidades y cualquier otro gasto relacionado al colegio que no sea equivalente a los gastos escolares de educación pública.

20. La persona no custodia provee un plan médico privado, MCS, para beneficio del menor.

21. Del 10 de abril de 2023 al 15 de marzo de 2024, bajo las Guías Mandatorias de 30 de octubre de 2014, la pensión alimentaria totaliza $522.44 mensuales.

22. Del 16 de marzo de 2024 en adelante, bajo las nuevas Guías Mandatorias de 15 de marzo de 2024, la pensión alimentaria totaliza $523.41 mensuales.

Acorde con el *Informe y Recomendaciones*, la EPA recomendó al Tribunal la modificación de la pensión alimentaria de la siguiente forma:[3]

1. Efectivo el 10 de abril de 2023 al 15 de marzo de 2024, el Sr. Javier A. López Ramos pagará $522.44 mensuales, en concepto de pensión alimentaria.

2. Del 16 de marzo de 2024 en adelante, el señor López Ramos pagará $523.42 mensuales, a razón de $261.71 quincenales, en concepto de pensión alimentaria. Esta cantidad deberá depositarla en una cuenta de la Sra. Adlyn R. Padilla Rodríguez en

---

[3] Todos los énfasis en el original fueron suprimidos.

el Banco Popular de P.R., mediante ATH Móvil. Ambas partes deberán llevar récord de lo pagado y lo recibido.

3. No existe deuda por concepto de retroactividad.

4. Se ordene al señor López Ramos pagar el 59% de los gastos escolares regulares (uniformes, materiales escolares, etc.), excluyendo matrícula, mensualidades y cualquier otro gasto relacionado al colegio que no sea equivalente a los gastos escolares de educación pública, y extraordinarios (graduaciones, actividades escolares, etc.) razonables. La señora Padilla Rodríguez tendrá 15 días para notificar los recibos o documentos una vez incurra en el gasto y el señor López Ramos tendrá 15 días para examinar los recibos o documentos y pagar la deuda. Si es mediante "*lay away*", la señora Padilla Rodríguez deberá proveer al señor López Ramos copia de la factura en el término de 5 días. Si es mediante cotización, la señora Padilla Rodríguez deberá proveer al señor López Ramos copia de la factura en el término de 5 días.
Cualquier artículo que tenga un valor mayor de $150.00 deberá ser consultado con el otro padre con patria potestad.

5. Se ordene al señor López Ramos pagar el 59% de los gastos médicos necesarios no cubiertos por el plan médico. La señora Padilla Rodríguez tendrá 15 días para notificar los recibos o documentos una vez incurra en el gasto y el señor López Ramos tendrá 15 días para examinar los recibos o documentos y pagar la deuda. Si es mediante cotización, la señora Padilla Rodríguez deberá proveer al señor López Ramos copia de la factura en el término de 5 días.

6. Los recibos o documentos deberán ser notificados al padre o madre no custodio de forma tal que, de existir controversia, el padre o madre custodio pueda demostrar que cumplió con los términos aquí dispuestos. Se advierte al padre o madre no custodio que, de no objetar los recibos o documentos notificados con relación a estos gastos en el término concedido, se entenderá que está de acuerdo con los mismos y que acepta libremente las cantidades reclamadas.

Inconforme, el 3 de junio de 2024, la señora Padilla Rodríguez solicitó reconsideración, pero la misma fue denegada por el foro de instancia mediante una *Resolución* emitida el 11 de junio de 2024.

Aun en desacuerdo, la señora Padilla Rodríguez recurre ante nos y alega que el TPI cometió los siguientes errores:

Erró el TPI al concluir que el ingreso neto mensual de la Sra. Padilla es de $1,583.45.

> Erró el TPI al concluir que el testimonio de la peticionaria en cuanto al gasto de vivienda no mereció credibilidad, por lo que no procedía incluirlo como parte del cómputo de la pensión alimentaria.
>
> Erró el TPI al concluir que, a pesar de que se solicitó el pago de honorarios a favor del alimentista, la Examinadora no lo mencionó en sus determinaciones de hechos de su Informe y Recomendaciones.

El 30 de julio de 2024, el señor López Ramos presentó su *Oposición a la Expedición de Certiorari.* Con el beneficio de la comparecencia de ambas partes, así como de la regrabación de la vista celebrada el 6 de mayo de 2024, procedemos a resolver.

**II.**

**A.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023*); León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019).[4]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime.

---

[4] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra.*

Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte

que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

**B.**

Sabido es que los casos relacionados con los alimentos de los menores están revestidos del más alto interés público y que, en estos, el norte siempre es el bienestar del menor. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 717 (2022); *Toro Sotomayor v. Colón Cruz,* 176 DPR 528, 535 (2009); *Argüello v. Argüello,* 155 DPR 62 (2001); *Figueroa Robledo v. Rivera Rosa,* 149 DPR 565, 572 (1999). La Constitución de Puerto Rico establece que la obligación de los progenitores de alimentar a sus hijos menores de edad es parte del derecho a la vida.[5] *De León Ramos v. Navarro Acevedo,* 195 DPR 157 (2016).

En el ámbito de los procedimientos legales para la imposición, revisión o modificación de una pensión alimentaria, la *Ley Orgánica de la Administración para el Sustento de Menores*, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501-529 (a), le exige al juzgador computar la misma mediante ciertas Guías. El Reglamento Núm. 9535 de 15 de febrero de 2024, denominado *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico* anuló las anteriores Guías Mandatorias.[6] En particular, el Art. 11 de las Guías Mandatorias explica cómo se realiza el cómputo del ingreso neto mensual:

> Para obtener el ingreso neto mensual de la persona custodia y el de la persona no custodia, se le resta al ingreso bruto anual, las deducciones mandatorias anuales y las deducciones aceptadas anuales; y el resultado se divide entre los doce (12) meses del año.

---

[5] Art. II, Sec. 7, Const. ELA, LPRA, Tomo I.
[6] Reglamento Núm. 8529 del 30 de octubre de 2014 del Departamento de la Familia, ASUME, según enmendado por el Reglamento Núm. 8564 del 6 de marzo de 2015. Las Guías Mandatorias fueron emitidas de conformidad con el Artículo 19 de la *Ley Orgánica de la Administración para el Sustento de Menores*, supra.

De otro lado, el Art. 13 de las nuevas Guías Mandatorias, relacionado a una determinación del ingreso neto mensual por ingresos periódicos no frecuentes[7], dispone que:

> En aquellos casos en los que cualquiera de las partes y sus respectivos cónyuges, de aplicar, reciba ingresos periódicos no frecuentes, según definido en este Reglamento, el juzgador calculará el promedio mensual que la persona recibe por el referido concepto. Para ello, dividirá la cantidad que reciba la persona entre el número de meses que transcurren entre el recibo de un pago y otro. El juzgador también promediará la cuantía a la que ascienden las deducciones mandatorias que se aplican al ingreso que la persona obtiene por concepto de ingresos periódicos no frecuentes y la cantidad que obtenga, la restará del ingreso bruto mensual proveniente por el referido concepto. Ello representará el ingreso neto mensual por concepto de ingresos periódicos no frecuentes, el cual el juzgador sumará al ingreso neto mensual según determinado en el Artículo 11 de este Reglamento.

Como es sabido, la obligación de alimentar al menor es inherente a la maternidad y a la paternidad, por lo que recae sobre los obligados desde el momento en el que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar. *Díaz Rodríguez v. García Neris*, supra, pág. 718 (citas omitidas); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012). Esta obligación es personal de cada uno de los excónyuges, por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor una vez decretado el divorcio. *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019).

La *Ley Orgánica de la Administración para el Sustento de Menores* y las *Guías Mandatorias* fomentan la uniformidad del principio de proporcionalidad.[8] Al respecto, nuestro Tribunal Supremo expresó en *Díaz Rodríguez v. García Neris*, supra, pág. 719:

---

[7] Según el Art. 5, inciso 25 de las Guías Mandatorias, el ingreso periódico no frecuente se define como el ingreso que cualquiera de las personas recibe o recibirá periódicamente, pero con una frecuencia que excede los treinta y seis (36) meses.

[8] Véase, además, el Art. 663 del Código Civil de 2020, 31 LPRA sec. 7546.

> A través de un descubrimiento de prueba amplio y compulsorio sobre la situación económica de las partes, las Guías permiten establecer de manera uniforme y equitativa la aportación monetaria de cada parte mediante criterios numéricos y descriptivos que toman en consideración los ingresos de los obligados y las necesidades de los menores. *De León Ramos v. Navarro Acevedo*, supra, pág. 170, *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 564.

Para determinar la pensión alimentaria básica, el juzgador considerará los siguientes factores: (a) el ingreso neto mensual de la persona no custodia; (b) el ingreso neto de reserva mensual de la persona no custodia; (c) el total de dependientes de la persona no custodia independientemente de que no estén recibiendo pensión alimentaria o si residen o no con la persona no custodia; (d) la edad de cada alimentista; y (e) total de alimentistas para quienes se les fijará la pensión alimentaria. La pensión alimentaria suplementaria se establecerá tomando en consideración la responsabilidad que la persona custodia y la no custodia tienen con relación a los gastos suplementarios del alimentista o de los alimentistas a quien o quienes se le determinará la pensión alimentaria. Arts. 15 y 17 de las Guías Mandatorias.

### III.

Debido a que la controversia bajo nuestra consideración versa sobre un asunto de alimentos, podemos revisar discrecionalmente la decisión recurrida vía el auto de *certiorari*, al palio de la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones. *Supra.*

Mediante su primer señalamiento de error, la peticionaria aduce que el TPI erró al adoptar las recomendaciones de la EPA. Concretamente, alega que su ingreso es uno periódico no frecuente, por lo que el ingreso neto mensual que le adjudicó la EPA de $1,583.45, conforme su PIPE, no es correcto. Es su contención que, según el Art. 13 de las Guías Mandatorias, dicho ingreso sería $967.02.

Por su parte, el recurrido está conforme con la decisión impugnada. Es su parecer que el ejercicio realizado por la EPA al momento de calcular el ingreso neto mensual de ambas partes, según los ingresos presentados bajo juramento en la PIPE, fue adecuado. Argumenta que dicho ejercicio fue realizado tal y como dictaminan las Guías Mandatorias. Añade que el argumento de la peticionaria sobre el Art. 8 de las Guías Mandatorias no aplica, toda vez que ésta es empleada a tiempo completo en Bright Little Minds, en el cual genera un salario bruto de $1,800.00 mensuales. Asimismo, esboza que este trabaja a tiempo completo en la Universidad de Puerto Rico, Recinto de Ciencias Médicas, con un ingreso bruto mensual de $3,050.00. Al mismo tiempo, detalla que la EPA actuó correctamente al no aplicar el Art. 13 de las mencionadas Guías porque la peticionaria no presentó evidencia alguna de condiciones de salud o prestó testimonio sobre el particular. Por tanto, arguye que para que el TPI pudiera considerar alguna situación de salud de la peticionaria era indispensable que se presentara prueba pericial sobre la misma, lo que no ocurrió en este caso.

Un examen pormenorizado del expediente nos lleva a concluir que el primer error no fue cometido. La peticionaria no logró derrotar la deferencia que merecen las determinaciones de hechos realizadas por el foro primario en relación con su ingreso neto mensual.[9] Es claro que la EPA calculó el ingreso neto mensual de la peticionaria según las PIPE sometidas, los talonarios de pagos de los ingresos devengados, los testimonios de las partes y las Guías Mandatorias aplicables. No hallamos visos de irregularidad en cuanto a la

---

[9] Cabe señalar que, del expediente, específicamente del apéndice incluido en la oposición del recurrido, solo se desprenden cinco (5) talonarios de empleo de la peticionaria en Bright Little Minds. Estos cubren las siguientes fechas: 02/10/2023 al 13/10/2023, 16/10/2023 al 30/10/2023 y 16/11/2023 al 30/11/2023. Apéndice del alegato en oposición, págs. 94-98. Dos (2) de los talonarios contienen fechas repetidas.

apreciación de la prueba realizada en este aspecto por la EPA y consecuentemente, aprobada por el *foro a quo.*

Por otro lado, en el segundo señalamiento de error incluido en el recurso que hoy atendemos, la peticionaria esboza que presentó prueba directa del pago de renta de su residencia, por lo cual entiende que ésta debía ser considerada para el cálculo de la pensión alimentaria en beneficio de JALO. Precisa que el TPI se equivocó en no otorgarle credibilidad a su testimonio, y resalta que no proveyó la dirección física actual por temor a que el recurrido acuda a su residencia.

En respuesta a lo anterior, el recurrido esgrime que la peticionaria nunca presentó evidencia real y creíble del pago de arrendamiento, a pesar de las múltiples instancias que se le solicitó. Razona que el testimonio de la peticionaria durante la vista de revisión de pensión alimentaria fue incongruente.

Luego de un análisis de la totalidad de la prueba que surge del expediente, aunque es norma conocida que los tribunales apelativos no intervendrán con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, en esta ocasión determinamos ejercer parcialmente nuestra función revisora con el pronunciamiento impugnado.[10] El *Informe y Recomendaciones* de la EPA se rindió luego de que esta aquilatara toda la prueba traída a su atención. Sin embargo, escuchada la regrabación de la vista celebrada el 6 de mayo de 2024, específicamente en el aspecto de los gastos de vivienda presentados por la peticionaria ($535.00 mensuales), colegimos que la EPA erró al no incluirlos como parte del cómputo de la pensión alimentaria del menor.

---

[10] Véase, *Ortiz Ortiz v. Medtronics,* 209 DPR 759, 778 (2022); *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Gómez Márquez v. El Oriental,* 203 DPR 783, 793 (2020); *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018).

Si bien el contrato de arrendamiento presentado por la peticionaria no constituye la mejor prueba del gasto de vivienda alegado, por su escueto contenido, ni tampoco la peticionaria puso a la disposición del foro de instancia ningún recibo de pago del aludido gasto, ello no descarta por completo la partida de vivienda. Lo anterior, toda vez que, a nuestro entender, el testimonio de la peticionaria pudo establecer el gasto de $535.00 mensuales. Este Foro intermedio no está de acuerdo con la forma en que la EPA apreció el testimonio de la peticionaria, el cual catalogó como "forzado e impreciso"; con "incongruencias en las direcciones residenciales"; y justificaciones que le parecieron irrazonables por no divulgar la dirección específica de la residencia o no poder describir la ruta para llegar al lugar. Esto porque dichas determinaciones de hecho no son razones suficientes para excluir el gasto de vivienda alegado por la peticionaria.

Así las cosas, incidió el foro primario al emitir la *Resolución* de 13 de mayo de 2024 en la que aprobó el *Informe y Recomendaciones* de la EPA, únicamente en cuanto a no incluir como parte del cómputo de la pensión alimentaria los gastos de la vivienda alegados por la peticionaria. En consecuencia, se devuelve el caso al TPI para que incluya la partida de $535.00 mensuales como parte del establecimiento de la pensión alimentaria concernida.

Por último, la peticionaria solicita que se añada el pago de honorarios de abogado, al palio de la ley y jurisprudencia aplicable.[11] El recurrido manifiesta que estos no proceden porque la

---

[11] El Artículo 22 de la Ley Núm. 5, *supra*, establece lo siguiente:

(1) En cualquier procedimiento bajo este capítulo para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, el tribunal, o el Juez Administrativo deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca.

La imposición de los honorarios de abogado a favor de los menores, en una acción para reclamar alimentos a favor de éstos, procede sin la necesidad de que el demandado incurra en temeridad pues dicha partida es parte de los alimentos a los que tiene derecho el menor alimentista. *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1035 (2010). Véase, también, *Rodríguez v. Carrasquillo Nieves*, 177 DPR 728 (2009).

peticionaria no prevaleció en el trámite, y que, de hecho, la pensión alimentaria se redujo. En cuanto este asunto, del expediente no surge que la EPA se haya expresado. Por ende, toda vez que la decisión a la que hoy arribamos conlleva devolver el caso al TPI, sería prematuro tomar una decisión al respecto. Una vez la EPA compute la pensión alimentaria conforme lo aquí resuelto debe hacer una determinación sobre los honorarios de abogado, conforme al Artículo 22(1) de Ley Núm. 5, *supra*.

## IV.

Por los fundamentos que preceden, se expide el auto de *certiorari* solicitado y se revoca el pronunciamiento recurrido, **únicamente en cuanto a la decisión de la EPA y posterior aprobación del TPI de descartar los gastos de vivienda de la peticionaria**. En consecuencia, se devuelve el caso al foro de instancia para que lleve a cabo un nuevo cómputo de la pensión alimentaria de JALO en el cual se incluya el gasto de $535.00 mensuales. Por otra parte, se confirma la *Resolución* objetada en los demás aspectos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

El Juez Rodríguez Flores disiente sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones